# EXHIBIT A

# CONFIDENTIALITY/WORK MADE FOR HIRE AGREEMENT

THIS CONFIDENTIALITY/WORK MADE *OK* FOR HIRE AGREEMENT (this "*Agreement*"), dated as of this 16 day of ~~February~~ *June*, 2013, is by and between Fast Model Technologies, LLC, a New Jersey limited liability company ("*Company*"), and Brian Keh , an individual residing at 2045 W Haddon Ave ("*Individual*"). As a condition precedent to performing or continuing to perform services for Company, and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, Company and Individual hereby agree to the following for the benefit of Company and its successors and assigns:

1. **Confidential Information.**

1.1 As used herein, "*Confidential Information*" means private, confidential, trade secret or other proprietary information (whether or not embodied or contained in some tangible form) relating to any actual or anticipated business of Company or any research and development of Company, or information suggested by or resulting from any tasks assigned to Individual or work performed by Individual for or on behalf of Company. Confidential Information includes, but is not limited to, any information which, if kept secret, will provide Company an actual or potential economic advantage over others in the relevant trade or industry, such as, but not limited to: formulae, compilations, computer programs and files, source code and object code, devices, methods, techniques, know-how, inventions, research and development, business data (including cost and pricing data), strategies, methods, prospects, plans and opportunities, customer lists, marketing plans, specifications, financial information, invention disclosures, patent applications (whether abandoned or not), techniques, products, services and research. For purposes of this Agreement, Confidential Information shall also include any information or material received in confidence by Company from a third party. Confidential Information shall not include information that is known to Individual on a non-confidential basis prior to the time that Company first disclosed such information to Individual, as evidenced by Individual's written records existing at the time of such first disclosure.

1.2 Except as required in performing Individual's duties for Company or with the prior written authorization of Company, Individual shall not directly or indirectly use, disclose, disseminate, publish or otherwise reveal any Confidential Information for the benefit of any party other than Company, unless and only to the extent such Confidential Information becomes generally available to the public through no act or fault of Individual or his or her agents. In the event that Individual is required by a court of law to disclose Confidential Information, Individual shall first (unless legally prohibited) provide Company with notice and the opportunity to take appropriate action to preserve the confidential nature of the information.

1.3 Individual shall not disclose to Company, use in Company's business, or cause Company to use, any information that Individual has received in confidence from a third party, except to the extent permitted by such third party.

DOCSCT-2885545v2

## 2. Intellectual Property.

2.1 As used herein, "*Intellectual Property*" means inventions, discoveries, concepts and ideas, whether or not patentable, copyrightable, trademarkable, protectable as a mask work, or protectable as a trade secret including, but not limited to any process, method, formula, article, writing, composition, device, product, tool, machine, computer program, source code, object code, apparatus, appliance, design, drawing, practice, manufacture or technique, as well as any improvements thereto and know-how related thereto.

2.2 With respect to Intellectual Property made or conceived by Individual (either solely or jointly with another or others) during the period that Individual provides services to Company (including any period prior to the date of this Agreement) and which Intellectual Property (i) is in any way based on or related to Individual's work for or on behalf of Company or otherwise result from work performed for or at the request of Company or is within the scope of Individual's employment with Company, (ii) is based on or result from Individual's access to Confidential Information, (iii) relates to any service being provided to Company by Individual, or (iv) is conceived or made with the use or assistance of the facilities, materials or personnel of Company:

2.2.1 Individual shall promptly and fully inform Company of each such item of Intellectual Property in writing, setting forth in detail the procedures employed and the results achieved;

2.2.2 Individual shall apply, at Company's request and expense, or at the request and expense of such other person or entity as Company shall designate, for United States and foreign patents or copyrights or other form of protection either in Individual's name or otherwise as Company or its designee shall desire;

2.2.3 Individual agrees to and hereby does assign to Company or such other person or entity as Company shall designate all of Individual's rights to such Intellectual Property, including but not limited to applications for United States and/or foreign patents or copyrights, and United States and/or foreign patents or copyrights granted upon such Intellectual Property; and

2.2.4 Individual shall execute and deliver promptly to Company or its designee (without charge but at Company's or its designee's expense) such written instruments, and do such other acts, such as giving testimony in support of inventorship, authorship or contribution, as may be reasonably necessary in the opinion of Company to obtain and maintain United States and/or foreign patents or copyright or other protection and to vest the entire right and title of same in Company or its designee.

2.3 To the extent possible and notwithstanding anything in Section 2.2 to the contrary, any Intellectual Property made or conceived by the Individual shall be deemed a "work made for hire" within the meaning of § 101 of the Federal Copyright Act, as amended, and, accordingly, all right, title and interest in and to such Intellectual Property shall reside at all times with Company.

DOCSCT-2885545v2

3. **Excluded Intellectual Property.** Excluded from the obligations under Section 2 above are the following Intellectual Property:

None_____

Such Intellectual Property cannot be assigned to Company or its designee because of prior agreements or because they were made or conceived before any relationship with or request by Company.

4. **No Publication.** Individual shall not publish or cause to be published (including making presentations at any seminars, meetings or association proceedings) any information relating to any Intellectual Property or Confidential Information without prior written authorization from Company.

5. **Return of Materials.** Upon termination of Individual's service relationship with Company, for any reason, or if at any time requested by Company, Individual shall leave with Company and/or return to Company all Confidential Information and all property belonging to Company, in any and all formats (both tangible and intangible), including, without limitation, all documents, articles, writings, records, notebooks, data, reports, notes, compilations, computer files, data and programs, equipment, parts and tools and similar repositories or materials and any and all copies thereof.

6. **Non-Disparagement.** For the duration of the period during which Individual is an employee of Company and for an additional twelve (12) months thereafter, Individual agrees to refrain from taking action or making statements, written or oral, which disparage or defame, through innuendo or otherwise, the goodwill or reputation of Company or which could adversely affect the morale of other employees of Company.

7. **Injunctive Relief.** Individual understands and agrees that the terms of this Agreement are reasonable and necessary to protect the business interests of Company. Individual further agrees that Company would suffer immediate and irreparable losses if Individual violated the terms of this Agreement, which losses could not be adequately remedied by money damages alone. Thus, in addition to any other rights or remedies, all of which shall be deemed cumulative, Company shall be entitled to obtain injunctive relief to enforce the terms of this Agreement. In addition, Company shall be entitled to recover from Individual reasonable attorneys' fees and costs in the event that Company acts to enforce its rights hereunder.

8. **No Retention Rights.** Nothing in this Agreement confers upon Individual any right to continue in the service of Company for any period of specific duration or shall be construed to interfere with or otherwise restrict in any way the rights of Company or of Individual, which rights are expressly reserved by each, to terminate Individual's service at any time and for any reason or for no reason, with or without cause. Nothing in this Agreement shall alter the at-will nature of Individual's employment with the Company or create any obligation on the part of Company to continue to employ Individual.

DOCSCT-2885545v2

9. **Binding Agreement.** All of Individual's obligations under this Agreement shall be binding upon Individual's heirs, permitted assigns, and legal representatives.

10. **Assignment.** Company shall have the right to assign this Agreement to any affiliate or to a successor to all or substantially all the business or assets of Company. Individual shall not assign this Agreement.

11. **Final Agreement.** This Agreement contains the full agreement of the parties with respect to the subject matter hereof and supersedes and replaces any previous or existing agreement or understanding, written or otherwise, between or among Individual and Company relating solely to the subject matter hereof, and no modification shall be valid unless in writing and signed by both Individual and a duly authorized representative of Company.

12. **Severability.** In the event that any provision of this Agreement shall be held invalid or unenforceable by reason of the scope or duration thereof or for any other reason, such invalidity or unenforceability shall attach only to the particular aspect of such provision found invalid or unenforceable and shall not affect any other provision of this Agreement. To the fullest extent permitted by law, this Agreement shall be construed as if the scope or duration of such provision had been more narrowly drafted so as not to be invalid or unenforceable.

13. **Counterparts.** This Agreement may be executed simultaneously in two or more counterparts, each of which shall in such event be deemed an original, but all of which together shall constitute one and the same instrument.

14. **Applicable Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Connecticut, without reference to its principles of conflicts of laws.

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date first set forth above.

"INDIVIDUAL"

_____
(Signature)

Print Name: Brian Keto

FAST MODEL TECHNOLOGIES, LLC

By: _____
Name: _____
Title: _____

4