

# EXHIBIT E

## AGREEMENT AND GENERAL RELEASE

This confidential Agreement and General Release ("Agreement") is entered into by and between Fast Model Technologies, LLC (the "Company") and Andy Graham (hereinafter referred to as "you," or "your") to resolve any and all disputes concerning your employment with the Company and your separation from employment at the close of business on December 10, 2014 ("Separation Date"). Accordingly, in exchange for the consideration and mutual promises set forth herein, the parties do hereby agree as follows:

1. **Termination of Employment.** You understand and agree that your employment with the Company will terminate effective the Separation Date.

2. **Earned Compensation.** You shall be paid earned compensation through the Separation Date, equivalent to $3,846.15. Further, you will be paid for any accrued and unused Paid Time Off (PTO) equivalent to twelve (12) days, or $5,769.23. The Company will pay such earned compensation and accrued PTO during the normal payroll processing (i.e. December 15, 2014) and all applicable taxes and deductions will be withheld from such amounts. In addition, Company will reimburse you for any approved, unreimbursed expenses incurred through the Separation Date.

3. **Consideration.** On the day you execute this Agreement ("Effective Date"), and in consideration of your release of any and all claims, including employment related claims, you might have against the Company, as well as performance of transition matters as noted in paragraph 4, the Company agrees as follows:

A. The Company will pay you the total gross amount of $10,416.66 (i.e., the equivalent of one month's salary) which shall be payable in two (2) payments: $5,208.33 to be paid on December 31, 2014 and $5,208.33 to be paid on January 15, 2015. All applicable taxes and deductions will be withheld from such amounts.

B. The Company will pay your health insurance premium through January 31, 2015.

C. The Company will pay you $2,000 as bonus compensation for revenue attained in the Digital Business Unit. Such bonus compensation will be paid on January 15, 2015. All applicable taxes and deductions will be withheld from such amounts.

D. As further consideration, the Company will accelerate the vesting of 5,000 Class B Units that would otherwise be forfeited due to your separation from the Company prior to the December 31, 2014 vesting date. Therefore, your equity holdings in the Company subsequent to the Separation Date are 17,000 Class B Units. The remaining 5,000 Class B Units under the original grant agreement will remain unvested and will be forfeited. Terms of the Class B

Units were separately provided to you in a Class B Grant Agreement dated July 14, 2014.

4. **Transition.** You will effectively transition all duties, work product, and relevant business contacts and relationships to the Company's leadership team to ensure a seamless transition. This includes all in process efforts related to marketing, affiliate partnerships, marketing collateral and communications, and any other critical work-in-process items. Through the period ended January 15, 2015, you also agree to continue to provide limited telephone and e-mail support, as needed, to answer additional follow up and transition questions.

5. **Continuation of Benefits Coverage.** Benefits continuation for health coverage beyond January 31, 2015 is available to you under such provisions. You will be separately provided information of continuation of benefits rights. If you elect continuation coverage, the making of timely premium payments is solely your obligation.

6. **No Additional Payments or Benefits.** You acknowledge and agree that you will receive no additional payments or benefits other than as set forth herein or as required by law.

7. **Release.** In exchange for the promises herein which you acknowledge as good and valuable consideration, and except as provided in paragraph 8, you release and discharge the Company and its past, present and future parents, divisions, subsidiaries, and affiliates, predecessors, successors and assigns, and their past, present, and future officers, directors, members, partners, attorneys, employees, independent contractors, agents, clients, and representatives ("Released Parties") from any and all actions, causes of action, debts, dues, claims and demands of every name and nature, without limitation, at law, in equity, or administrative, against the Released Parties which you may have had, now have, or may have, by reason of any matter or thing arising up to the Effective Date of this Agreement, including the ending of your employment. Those claims and causes of action from which you release the Released Parties include, but are not limited to, any known or unknown claim or action sounding in tort, contract, or discrimination of any kind, and/or any cause of action arising under federal, state or local constitution, statute or ordinance, including, but not limited to, Title VII of the Civil Rights Act of 1964, as amended, the Americans With Disabilities Act, as amended, the Employee Retirement Income Security Act, as amended, the Family and Medical Leave Act, as amended, the Equal Pay Act, as amended, Section 1981 of the Civil Rights Act of 1866, as amended, the Worker Adjustment and Retraining Notification Act, as amended, the Sarbanes Oxley Act of 2002, as amended, the Arizona Civil Rights Act, as amended, as amended, and any other employee-protective law of any jurisdiction that may apply, and/or any claim for attorneys' fees or costs, whether presently accrued, accruing to, or to accrue to you on account of, arising out of, or in any way connected with any acts or activities by you or the Released Parties arising up to the Effective Date of this Agreement. You expressly acknowledge that no claim or cause of action against the Released Parties from the beginning of time to the Effective Date of this Agreement (other than as provided in paragraph 8) shall be deemed to be outside the scope of this Agreement whether mentioned herein or not. You agree that this release should be interpreted as broadly as possible to achieve your intention to waive, to the maximum extent permitted by law, any and all claims against the Released Parties. Excluded from the release set forth in this paragraph is any claim which cannot be waived as a matter of law.

2

8. **Rights and Claims Preserved.** Nothing in this Agreement limits your right, where applicable, to file or participate in an investigative proceeding of any federal, state, or local governmental agency, including filing a charge with the United States Equal Employment Opportunity Commission ("EEOC"). To the extent permitted by law, you agree that if such an administrative claim is made, you shall not be entitled to recover, accept, or retain any individual monetary relief or other individual remedies with respect to any matter covered by this Agreement.

9. **No Admission of Wrongdoing.** The Company denies any wrongdoing whatsoever in connection with its dealings with you, including but not limited to your employment and termination. It is expressly understood and agreed that nothing contained in this Agreement shall constitute or be treated as an admission of any wrongdoing or liability on the part of you or the Company.

10. **Non-Disclosure.** You understand and agree that this Agreement, and the matters discussed in negotiating its terms, are entirely confidential. It is therefore expressly understood and agreed that you will not reveal, discuss, publish or in any way communicate any of the terms, amount or fact of this Agreement to any person, organization or other entity, with the exception of your immediate family members and professional representatives, or in an action to enforce its terms, unless required by subpoena or court order.

11. **Non-Disparagement.** You and the Company agree that neither Party will disparage any of the Released Parties or make or publish any communication that reflects adversely upon any of them, consistent with paragraph 8.

12. **No Filing of Claims.** You represent that you have not filed, and to the maximum extent permitted by law and except as provided in paragraph 8, agree that you will not file, any charge, complaint, lawsuit or claim (collectively, "Claim") with any administrative agency, federal, state or local court (collectively, "Agency") related in any way to your employment or the separation of your employment with the Company. You further agree that you will not accept, and will not be entitled to retain, any judgment, award, settlement or other payment or other relief resulting from, or related to, any Claim filed with any Agency related in any way to your employment with the Company or the termination of your employment.

13. **No Voluntary Cooperation.** Except as provided in paragraph 7, and/or unless required to do so by court order or subpoena, you agree that you will not (i) voluntarily make statements, take action, or give testimony adverse or detrimental to the interests of the Company; or (ii) aid or assist in any manner the efforts of any third party to sue or prosecute a claim against the Company. Should you ever be required to give testimony concerning any matter related to your employment with the Company, you agree to provide notice of such compulsory process to Fast Model Technologies, LLC, 1266 East Main Street, Suite 700R, Stamford, CT 06902, Attn. Judy Boliakis (email: judy@fastmodeltechnologies.com), within two (2) business days of its receipt so that the Company may take appropriate measures to quash or otherwise defend its interests.

14. **Cooperation with the Company.** As requested by the Company, you agree to fully cooperate with the Company and to provide information and/or testimony regarding any

3

current or future litigation arising from actions or events occurring during your employment with the Company.

15. **Reemployment.** You agree that you will not seek reemployment with the Company or any current or future parent, subsidiary, or affiliate, except at the request of the Company.

16. **Return of Company Property.** You agree that, as a condition precedent to receiving any payment under this Agreement, you will by the Separation Date return all property belonging to the Company, including, but not limited to, corporate credit cards; keys and access cards; documents; tapes; cell phones; computers, laptops, BlackBerry and other computer equipment and software; and any and all confidential and proprietary information. Your access to the Company's property and facilities will end immediately upon the Separation Date.

17. **Non-Disclosure of Confidential Information.** You agree that you will not disclose or use, directly or indirectly, any "confidential information" as defined herein, and you represent that you have not already disclosed or used any confidential information, except as has been appropriate in the performance of your job with the Company. For the purposes of this provision, "confidential information" means all information related to the business of the Company that adds value to the Company that is not generally known to the public (whether or not it constitutes a trade secret), including, but not limited to, information relating to: products, services, costs, pricing structures, customers and clients (including their identity, contact information, and account information), methods of doing business, compensation information, the use of computer-related technology, inventions (whether or not patentable or reduced to practice), and contracts or potential contracts.

18. **Return of Consideration in Event of Breach.** You agree that receipt of any consideration and all payments under this Agreement is contingent on your full compliance with its terms and conditions. Should you breach any provision of this Agreement, including but not limited to filing a lawsuit based upon any claim covered by this Agreement, the Company shall have the right to recover from you any Severance Pay or other consideration already paid, and the Company shall no longer be obligated to pay you any Severance Pay or other consideration otherwise due.

19. **Attorneys' Fees and Jury Waiver.** You agree that, in the event the Company prevails in whole or in part in an action to enforce this Agreement, you will be responsible for the Company's reasonable attorneys' fees and costs. **You and the Company hereby waive trial by jury as to any and all litigation arising out of and/or relating to this Agreement.**

20. **Certification of Understanding and Competence.** You acknowledge and agree that (a) you have read this Agreement in its entirety; (b) you are competent to understand, and do understand, the content and effect of this Agreement; (c) by entering into this Agreement, you are releasing forever the Released Parties from any claim or liability (including claims for attorney's fees and costs) arising from your employment with the Company; (d) you are entering this Agreement of your own free will in exchange for the consideration herein, which you agree is adequate and satisfactory; and (e) neither the Company nor the Released Parties have made any representations to you concerning the terms or effect of this Agreement, other than those contained in the Agreement.

4

DSMDB-3223256v1

21. **Acknowledgments.** You acknowledge and agree that (a) you are not owed any wages by the Company for work performed, whether as wages or salary, overtime, bonuses or commissions, or for accrued but unused paid time off, and that you have been fully compensated for all hours worked; (b) you are not aware of any factual basis for a claim that the Company has defrauded the government of the United States or any State; (c) you have incurred no work related injuries; (d) you have received all family or medical leave to which you were entitled under the law; and (e) you have been and hereby are advised to consult with legal counsel of your choice prior to execution and delivery of this Agreement, and that you have done so or voluntarily elected not to do so.

22. **Ownership of Claims.** You represent and warrant that you are the sole and lawful owner of all rights, title and interest in and to all released matters, claims and demands referred to herein. You further represent and warrant that there has been no assignment or other transfer of any interest in any such matters, claims or demands which you may have against the Released Parties.

23. **Counterparts.** This Agreement may be executed in separate counterparts and by facsimile, and each such counterpart shall be deemed an original with the same effect as if all parties had signed the same document.

24. **No Other Understandings.** This Agreement, consisting of six (6) pages, constitutes the entire Agreement between the parties with respect to its subject matter, and is binding upon and shall inure to the benefit of the parties and their respective heirs, executors, administrators, personal or legal representatives, successors and/or assigns; *provided that* nothing herein shall excuse you from complying with, or limit in any way your obligation under, any policy or agreement with the Company regarding trade secrets, confidential or proprietary information, intellectual property, or other restrictive covenants. This Agreement may be amended only by a written agreement signed by you and the Company.

25. **Headings.** The headings in this Agreement are for convenience only and are not to be considered a construction of the provisions hereof.

26. **Severability and Governing Law.** If any provision of this Agreement is found to be invalid, unenforceable or void for any reason, such provision shall be severed from the Agreement and shall not affect the validity or enforceability of the remaining provisions. This Agreement shall be interpreted, enforced and governed by the laws of the State of Connecticut, without regard to the conflicts of law provisions thereof.

27. **Acceptance of Agreement.** The Company is providing you 10 calendar days to consider whether to accept this Agreement (although you may accept it at any time within those 10 days), after which time the offer expires and is withdrawn if you have not yet accepted it. To accept the Agreement, you must sign below and send it on or before December 19, 2014, to Fast Model Technologies, LLC, 1266 East Main Street, Suite 700R, Stamford, CT 06902, Attn. Judy Boliakis (email: judy@fastmodeltechnologies.com).

28. **Non-Compete Obligations.** The parties to this Agreement expressly agree that this paragraph specifically replaces section 7(f)(i) of the Class B Grant Agreements executed on February 3, 2011 and July 14, 2014 as follows:

5

In consideration of the grant of the Units, you agree that beginning on the date hereof and ending on the date that is one year following the termination or cessation of your provision of services to the Company or any of its affiliates, neither you nor any affiliate of yours will:

The remaining provisions of section 7(f)(i) remain unchanged by this provision and the parties expressly agree that they remain in full force and effect.

Dated: 12/16/14

Andy Graham

Dated: 12/16/14

Albert L Tsai
Chief Operating Officer
Fast Model Technologies, LLC

6